Gene STILP, Petitioner

v.

COMMONWEALTH of Pennsylvania, General Assembly, Jack Wagner, Auditor General of the Commonwealth of Pennsylvania, Department of Auditor General, Robert C. Jubelirer, David Brightbill, Robert Mellow, John M. Perzel, Sam Smith, H.W. DeWeese, Leadership of the General Assembly, Noah Wenger, Legislative Audit Advisory Commission, and Robert P. Casey, Jr., Treasurer of the Commonwealth of Pennsylvania, Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 5, 2006.

Decided April 24, 2006.

Gene Stilp, petitioner, pro se.

Robert F. Teplitz, Chief Counsel, Harrisburg, for respondents, Jack Wagner and Department of Auditor General.

Linda J. Shorey, Harrisburg, for respondents, Robert C. Jubelirer, David Brightbill, and Noah Wenger.

Thomas W. Dymek, Philadelphia, for respondents, Robert Mellow, John M. Perzel, Sam Smith, H.W. DeWeese, and Leadership of the General Assembly.

Sally Ann Ulrich, Chief Counsel, Harrisburg, for respondent, Robert P. Casey, Jr.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, and SIMPSON, Judge.

OPINION BY Judge PELLEGRINI.

Before this Court are amended preliminary objections filed by Auditor General Jack Wagner and the Department of the Auditor General of the Commonwealth of Pennsylvania (collectively, Auditor General); The General Assembly of the Commonwealth of Pennsylvania, Legislative Audit Advisory Commission, Speaker John M. Perzel, Senator Robert J. Mellow, Representative Samuel H. Smith and Representative H. William DeWeese, Leadership of the General Assembly; Senator Robert C. Jubelirer, Senator David Brightbill, Senator Noah Wenger; and Robert P. Casey, Jr., Treasurer of the Commonwealth of Pennsylvania (collectively, Respondents), in response to an amended petition for review filed by Gene Stilp (Stilp) in which he alleges, *inter alia*, that the Auditor General failed to perform an audit of the General Assembly in violation of his duties which resulted in unconstitutional conduct by the General Assembly.[1]

Stilp, a resident and taxpayer of the Commonwealth, has filed an amended petition for review in this Court's original jurisdiction against Respondents alleging that the Auditor General was not performing his mandated duty of auditing the financial accounts controlled by the General Assembly. He contends that this duty is mandated by Article VIII, Section 10 of the Pennsylvania Constitution, which provides:

> The financial affairs of any entity funded or financially aided by the Commonwealth, and all departments, boards, commissions, agencies, instrumentalities, authorities and institutions of the Commonwealth, shall be subject to audits made in accordance with generally accepted auditing standards.

> Any Commonwealth officer whose approval is necessary for any transaction relative to the financial affairs of the Commonwealth shall not be charged with the function of auditing that transaction after its occurrence.

Relying solely on Article VIII, Section 10 of the Pennsylvania Constitution, Stilp avers in his amended petition for review that because of that constitutional section, the General Assembly has insulated itself from being independently audited, and the Auditor General's refusal to conduct such audits is based on an erroneous legal interpretation of the Constitution that he has no such duty. Noting that both the Executive and Judicial Branch's[2] expenditures

---

1. On October 11, 2005, Stilp filed a petition for review in this Court's original jurisdiction seeking a declaratory judgment that the Auditor General had the authority to audit the General Assembly. The named respondents filed preliminary objections after which Stilp filed an amended petition for review on December 2, 2005, seeking the same relief but expanding the number of respondents and adding, *inter alia*, allegations regarding the Legislative Audit Advisory Committee. The previously named and newly named respondents then filed amended preliminary objections.

2. Stilp makes the argument that 42 Pa.C.S. § 3529(b) allows the Auditor General to audit the judiciary, thereby indicating that one branch may audit another branch of government and illustrating that the Separation of Powers Doctrine does not act to preclude the Auditor General from auditing the General

are subject to audit by the Auditor General, he argues that the accounts of the Legislative Branch should be similarly audited, but not by the "self-serving" Legislative Audit Advisory Commission[3] (Commission) that it created to perform the function of auditing its financial accounts. Stilp argues that it is not independent because four of the eight members of the Commission are members of the General Assembly, and the other four are legislative appointees. Stilp seeks declaratory relief asking us to find that the Auditor General has the power, authority and duty to audit the General Assembly and to find that the creation of the self-serving Commission, as the only entity allowed to audit the General Assembly, is illegal and/or unconstitutional. He also asks this Court to compel the Auditor General to audit the accounts and books of the General Assembly and to compel the General Assembly leadership and members of the Commission to cooperate and comply with that order.

In response to the petition for review, all of the Respondents have filed amended preliminary objections[4] arguing,

*inter alia*,[5] that the General Assembly has satisfied the requirement of Article VIII, Section 10 of the Pennsylvania Constitution with the creation of the Commission which requires that it "[e]xamine the standards of audits performed under the provisions of Section 10 of Article VIII, of the Constitution of Pennsylvania, and recommend measures for the improvement of pre-auditing and post-auditing of the financial affairs of the Commonwealth," 71 P.S. § 1189.2,[6] and requires that audit be done by "a certified public accountant to be retained by the Legislative Audit Advisory Commission." 71 P.S. § 1189.1. They go on to note that under Article 4, Section 1 of the Pennsylvania Constitution, the Auditor General is specifically made part of the Executive Branch, is not empowered by the Constitution to audit the General Assembly, and is otherwise without power to do so because if he did, that would violate the doctrine of Separation of Powers. Having not set forth any basis under the Pennsylvania Constitution or any statute that authorizes the Auditor General to audit the General Assembly, they request

Assembly. Because that issue is not before us, we will not address it.

3. The Commission was created by the Act of June 30, 1970, P.L. 442, *as amended*, 71 P.S. §§ 1189.1–1189.2 (Act 151). Section 1 of Act 151, 71 P.S. § 1189.1, provides:

> The financial affairs of the General Assembly and its legislative service agencies shall be audited by a certified public accountant to be retained by the Legislative Audit Advisory Commission. At least one such audit shall be made each year; however, special audits will be made when they appear necessary in the judgment of the Legislative Audit Advisory Commission.

4. In ruling on preliminary objections, we must accept as true all well pled allegations of material fact as well as all of the inferences reasonably deduced therefrom. *Marcavage v. Rendell*, 888 A.2d 940 (Pa.Cmwlth.2005). For

preliminary objections to be sustained, it must appear with certainty that the law will permit no recovery, and any doubt must be resolved in favor of the non-moving party by refusing to sustain the objections. *Id.*

5. The Respondents raise several other preliminary objections: the amended petition fails to include a copy of the Ernst & Young report; the amended petition fails to explain with sufficient specificity and reliability why the Ernst & Young report and the audit that formed the basis of that report were incomplete and inadequate; Stilp has failed to join indispensable parties; and his claim is barred by laches and waiver. Based on how we have decided the issue of the Auditor General's authority to audit the General Assembly, we need not address these other preliminary objections.

6. Section 2 of Act 151.

that we dismiss Stilp's amended petition for review with prejudice.[7]

In support of their preliminary objections, even though Article VIII, Section 10 of the Pennsylvania Constitution was enacted after it was issued, all of the Respondents have referred us to a formal Opinion issued by the acting Attorney General in 1966, Edward Friedman, which addressed a question posed to him at that time by the Auditor General Grace M. Sloan—whether the Department of Auditor General had the power and the duty to make and conduct an audit of appropriations for officers, members and employees of the Legislative departments—suggesting that it was reasoned and should serve as a template for us to decide whether the Auditor General has the authority to audit the financial affairs of the General Assembly.

The Attorney General's opinion that the Auditor General did not have the power to audit the General Assembly was based first on the fact that the Pennsylvania Constitution did not confer any obligation or authority on the Auditor General to audit any of the accounts of any department or branch of the state government. Next, he referred to The Fiscal Code,[8] noting that although it listed the Auditor General's power and duty to audit accounts, there was no reference to audit the accounts of the General Assembly or the legislature stating:

> It is our opinion, therefore, that the General Assembly has not by general law subjected its officers or agencies to any degree of accountability to the Auditor General. It has obviously exercised its constitutional prerogative to reserve that power to itself.

(Official Opinion No. 270, Opinions of the Attorney General, at 46 (July 15, 1966)). The Attorney General then explained how his decision was supported by the Separation of Powers Doctrine stating:

> Our conclusion is buttressed by the doctrine of separation of powers between the executive, legislative and judicial branches of State Government. This is a basic tenet of Pennsylvania's form of constitutional government which cannot be altered unless clearly and unequivocally provided for in the Constitution. The structure of the Pennsylvania Constitution carries out this doctrine by treating each branch of the government together with its powers and duties in separate articles.

> * * *

> By virtue thereof the legislature is an independent branch of the State Government subject only to those limitations placed upon it by the Constitution or

---

**7.** All of the Respondents have preliminarily objected on the basis that Stilp lacks standing to bring this action either because he has failed to allege an interest which is substantial, direct and immediate or because he has not shown that he has suffered any injury. While the issue is close, we find for purposes of this appeal that Stilp has standing under *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 507 A.2d 323 (1986), which requires him to demonstrate that 1) the governmental action would otherwise go unchallenged; 2) those directly and immediately affected by the governmental action are not inclined to challenge it; 3) judicial relief is appropriate; 4) there is no redress through

other channels; and 5) no other persons are better suited to assert the claim. *See also In Re Milton Hershey*, 867 A.2d 674 (Pa. Cmwlth.), *petition for allowance of appeal granted*, —— Pa. ——, 889 A.2d 1219 (2005) (taxpayer need not suffer any pecuniary harm to have standing to sue in state court; relaxed application of substantial-direct-immediate test in *William Penn*). Consequently, the preliminary objections on this issue raised by all of the Respondents are denied.

**8.** Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. §§ 1–1804.

itself. A unilateral action such as an audit of any expenses of the officers of the General Assembly by the Auditor General would most certainly be an intrusion upon the prerogative of a coordinate branch of the State Government and the violation of that fundamental doctrine inherent in our form of government.

\* \* \*

Your statement that the Auditor General is conferred with the power and invested with the duty to make such audits which may be necessary in connection with the administration of the Commonwealth's financial affairs, and to audit the accounts and records of every person receiving an appropriation of money from the State Treasury is without constitutional or statutory support and is not the law of this Commonwealth. Neither statutory nor constitutional authority is ever presumed. It must be specifically defined. Only those areas which are designated by the constitution or by the legislature are proper areas for audits by the Auditor General. As has been determined, this area is confined exclusively to the executive branch of the government. Since the legislature has not seen fit to provide by statute that its accounts, or the accounts of its officers should be subject to audit by the Auditor General, it cannot be presumed, or even inferred, that the Auditor General has any such inherent power.

\* \* \*

We are therefore of the opinion and you are accordingly advised that neither the Constitution nor the statutes of the Commonwealth of Pennsylvania confer any power or authority upon the Department of the Auditor General to audit the contingent expense accounts of the officers of the General Assembly. Consequently, that Department has no such duty or authority.

*Id.* at 46–49. Because the Constitution and legislation never designated the Auditor General as the party who had to audit the General Assembly, based on the Separations of Power doctrine, Attorney General Friedman opined that the Auditor General had no authority to audit the General Assembly.

After this opinion was issued, Article VIII, Section 10 was adopted in 1968 as a result of the Constitutional Convention of 1968. The Respondents contend that nothing in that provision or in any subsequent amendment in the Constitution authorizes the Auditor General to audit the General Assembly, making the reasoning of the Attorney General as cogent today as it was 40 years ago. They point out that Article VIII, Section 10 did nothing to enlarge the powers of the Auditor General even though, presumably, the authors were aware that the Attorney General had issued an opinion that the Auditor General had no power to audit the General Assembly.

All that Article VIII, Section 10 does is require audits of the "financial affairs of any entity funded or financially aided by the Commonwealth, and all departments, boards, commissions, agencies, instrumentalities, authorities, and institutions of the Commonwealth shall be subject to audits." Assuming that the General Assembly fell somewhere within those provisions, it does not specify who is to conduct the audits, leaving the particulars to the legislation. Leaving the details of who, how and when to the General Assembly was not an accident, but a conscious choice of the delegates to the Constitution.

The initial version of what is now Article VIII, Section 10 (Section 1 of Proposal No.

4) was quite detailed.[9] It mandated regular audits of the affairs (not just financial affairs) of each and every entity or part of local or Commonwealth government that was fully or partially funded by the Commonwealth, designated who would do the pre-and post-audits, and directed the General Assembly to enact legislation "which shall (i) describe the audit function, standards, regularity and purposes of audits of the Commonwealth, and (ii) designate the officer or department responsible to perform or have performed the other audit functions and purposes described." *See* DEBATES, Vol. I at 425. After the first debate on Proposal No. 4, Delegate Leonard, co-chair of the Committee responsible for Proposal No. 4, proposed his second amendment, which (unlike the first corrective amendment) included a substantive change to Section 1 because, among other reasons, "there were some who felt there was legislation" in it. *See* DEBATES, Vol. II at 638–39.

Delegate Leonard's proposed amendment to Section 1 removed the detail of who was to perform what type of audit and removed all direction to the General Assembly. *Compare* DEBATES, Vol. I at 555 *with* Vol. II at 638 (2nd Leonard Amendment). Delegate Leonard described the pared-down audit provision: "What we have now is this: We have an audit provision that will require or make all government fiscal affairs to be audited, and it will require these audits to be in accordance with high standards. I am sat-

isfied at this point that the legislature will move expeditiously to implement this section of the Constitution when it becomes adopted." DEBATES, Vol. II at 639. Delegate Leonard further explained that the designation of who had the "powers of preaudit and postaudit" was removed because it "may have been creating a tremendous problem." *Id.* at 640. He again explained the revised Section 1: "We have the guidelines in the first paragraph, and I feel quite certain that there has been enough said on this that the legislature, when it reconvenes, will consider appropriate legislation to take care of this problem." *Id.* at 640–41. Prior to being agreed to, the Leonard amendment to Section 1 was modified by an amendment proposed by Delegate Fineman, but that amendment did not return any of the detail. *See* DEBATES, Vol. II at 723.

Shortly before the final agreement on Proposal No. 4 on February 27, 1968, Delegate Wilcox (a member of the Committee responsible for drafting Proposal No. 4), in opposition to a failed attempt to amend Section 1, explained that the section "does not assign various tasks to any particular officers. It will be up to the Legislature to implement this." *Id.* at 1299. It is clear, then, that Article VIII, Section 10 does not give any inherent power to the Auditor General to audit the General Assembly.[10]

Similarly, since the Attorney General's 1966 opinion, the Fiscal Code does not provide any authority for the Auditor Gen-

---

9.  The Debates of the 1968 Constitutional Convention as well as other source material can be found at http://www.paconstitution.duq.edu/convention1967/ACLLindex.htm.

10.  Stilp makes the argument that because Article IV, Section 2 of the Pennsylvania Constitution vests the executive power in the governor, and the executive department includes the Auditor General, it follows that the Pennsylvania Constitution delegated the function of auditing to the executive branch and, impliedly, to the Auditor General. Nowhere in Article 4, Section 2 of the Pennsylvania Constitution does it state explicitly or imply that the Auditor General is to audit the General Assembly just because the Auditor General is a member of the executive branch of government. What Article 4, Section 2 does is take away power from the Governor by creating an independently-elected Auditor General.

eral to audit the General Assembly. Prior to the adoption of Article VIII, Section 10 of the Pennsylvania Constitution, the Auditor General was charged with the responsibility of auditing the departments of the Commonwealth with the exception of his own department, pursuant to Section 402 of the Fiscal Code,[11] which the Attorney General found in 1966 gave no power to the Auditor General to audit the accounts of the General Assembly. If there was any doubt as to whether that provision authorized the Auditor General to audit the General Assembly, that was removed when the General Assembly enacted Act 151, 71 P.S. §§ 1189.1[12] and 1189.2 detailing how the audits of affairs of the General Assembly were to be conducted. Under Act 151, that power was given to the Commission who, in turn, hired Ernst and Young which audited the financial accounts of the General Assembly in accordance with generally accepted auditing standards.

■ Although the Opinion of the Attorney General was issued 40 years ago, nothing has changed that would invalidate the cogent reasoning contained in the opinion as to why the Auditor General has no authority to audit the General Assembly, and it can be summarized as follows: there is no Constitutional provision authorizing such an audit; there is no statute authorizing such an audit; and the Separation of Powers doctrine prohibits such an audit. Based on the foregoing reasoning that there is absolutely no support provided anywhere authorizing the Auditor General to conduct an audit of the General Assembly and Stilp has not proven otherwise, the preliminary objections of the Respondents[13] are sustained and Stilp's petition for review is dismissed.

Judge COHN JUBELIRER and Judge LEAVITT did not participate in the decision of this case.

### ORDER

AND NOW, this *24th* day of *April*, 2006, the preliminary objections filed by the Respondents are sustained and the Petitioner's petition for review is dismissed.

CONCURRING and DISSENTING OPINION BY Judge SIMPSON.

I concur in the thoughtful majority conclusion that the Petitioner, Gene Stilp, fails

---

**11.** 72 P.S. § 402. That section provides, in pertinent part:

Except as may otherwise be provided by law it shall be the duty of the Department of the Auditor General to make all audits of transactions after their occurrence, which may be necessary, in connection with the administration of the financial affairs of the government of this Commonwealth, with the exception of those of the Department of the Auditor General. It shall be the duty of the Governor to cause such audits to be made of the affairs of the Department of the Auditor General.

**12.** 71 P.S. § 1189.1 provides:

The financial affairs of the General Assembly and its legislative service agencies shall be audited by a certified public accountant to be retained by the Legislative Audit Advisory Commission. At least one such audit shall be made each year; however, special audits may be made when they appear necessary in the judgment of the Legislative Audit Advisory Commission.

**13.** State Treasurer Robert P. Casey, Jr. has requested that we dismiss him as a party to this action because Stilp has asserted no claim against him as Treasurer and, therefore, has failed to state a claim against him upon which relief may be granted. Senators Jubelirer, Brightbill and Wenger also request that we dismiss them from this action pursuant to the Speech or Debate Clause of the Pennsylvania Constitution which they allege provides them with immunity. Because this matter has been decided favorably for all Respondents, the continued participation of State Treasurer Casey and the senators is a non-issue.

to state a legal basis for the Auditor General to audit the General Assembly.

I write separately to address another aspect of Petitioner's amended petition for review. Petitioner pleads that the audit performed for the Legislative Audit Advisory Committee by an outside auditing firm was not performed in accordance with generally accepted auditing standards. Based on a newspaper report (because he does not currently possess a copy of the audit), Petitioner believes the auditors "were not permitted to look through all of the books or for information to allow them to provide an audit in accordance with generally accepted auditing standards." Amended Petition for Review, ¶ 61; *see also* ¶¶ 52, 53, 59, 60. Although Petitioner primarily seeks remedies involving an audit by the Auditor General, he also prays for "any other such further equitable or declaratory relief as deemed necessary by the Court. . . ."

Article VIII, Section 10 of the Pennsylvania Constitution requires audits to be made in accordance with generally accepted auditing standards. As implausible as it sounds, we must accept for present purposes that the audit for the Legislative Audit Advisory Commission was not performed according to these standards. *Dep't of Gen. Servs. v. Bd. of Claims*, 881 A.2d 14 (Pa.Cmwlth.2005). Therefore, I believe Petitioner states a claim against that Commission and its representative member, Noah Wenger. I would require an answer by those Respondents only.