Gene STILP, Petitioner

v.

COMMONWEALTH of Pennsylvania, General Assembly, Robert C. Jubelirer, David Brightbill, Robert Mellow, John M. Perzel, Sam Smith, H.W. DeWeese, Leadership of the General Assembly, Edward G. Rendell, Governor of the Commonwealth of Pennsylvania, Robert P. Casey, Jr., Treasurer of the Commonwealth of Pennsylvania, Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 7, 2006.

Decided Nov. 13, 2006.

Gene Stilp, petitioner, pro se.

Amanda L. Smith, Deputy Attorney General and Thomas W. Corbett, Jr., Attorney General, Harrisburg, for Edward G. Rendell.

John P. Krill, Jr., Harrisburg, for respondents, Robert C. Jubelirer and David Brightbill.

James F. Tierney, IV, Scranton, for respondent, Robert J. Mellow.

Thomas W. Dymek, Philadelphia, for respondents, John M. Perzel, Samuel H. Smith, and William DeWeese.

Sally Ann Ulrich, Chief Counsel, Harrisburg, for respondent, Robert P. Casey, Jr.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, and PELLEGRINI, Judge, and LEADBETTER, Judge, and SIMPSON, Judge.

OPINION BY Judge SIMPSON.

In this original jurisdiction matter, a resident taxpayer challenges on constitutional grounds the availability to state legislators of anything of benefit beyond "salary and mileage." Also, constitutional challenges are raised to local grant monies,

referred to as "walking around money" or "WAMs," and to leadership accounts. In addition to the General Assembly and the named legislative leaders of both parties, the Governor and the Treasurer are named as Respondents.[1]

Currently before the Court are Respondents' preliminary objections to the Amended Petition for Review filed by Gene Stilp, who represents himself. The preliminary objections raise in excess of 24 issues. For reasons more fully discussed below, we sustain the preliminary objections to all counts except Count XII (leadership accounts). Stilp is granted leave to timely file a second amended petition containing further averments as to the Treasurer and as to Count XIII(i) (WAMs) only.

## I. Amended Petition for Review

The basic premise of this lawsuit is that state legislators have access to things that benefit them beyond that which is expressly permitted by the Pennsylvania Constitution. Most significantly, Article II, Section 8, titled "Compensation," provides:

> The members of the General Assembly shall receive such salary and mileage for regular and special sessions as shall be fixed by law, and no other compensation whatever, whether for service upon committee or otherwise. No member of either House shall during the term for which he may have been elected, receive any increase of salary, or mileage, under any law passed during such term.

PA. CONST. art. II, § 8. The things of value or benefit specifically challenged pursuant to this provision are as follows:

Count I—Additional Salary, Perks, Benefits and Other Things of Economic Value;

Count II—Legislative Health Care Benefits;

Count III—Long Term Care Benefits;

Count IV—Insurance Benefits;

Count V—Drug and Medication Benefits;

Count VI—Automotive and Transportation Benefits;

Count VII—Taxpayer Financed Television Commercials and Partisan Television Shows;

Count VIII—Taxpayer Financed Mailings;

Count IX—Cost of Living Increase;

Count X—Fixed Salary;

Count XI—Per Diems;

Count XIII(ii)—Hired Lawyer Expenditures for Legislators' Personal Needs;[2] and,

Count XIV—Any and All Other Perks that Are Hidden from the Public Because of the Lack of a Publicly Accessible Accounting System.

In addition, Stilp invokes two other state constitutional provisions. First, he quotes Article VIII, Section 14 of the Pennsylvania Constitution, titled "Surplus," which provides:

> All surplus of operating funds at the end of the fiscal year shall be appropriated during the ensuing fiscal year by the General Assembly.

PA. CONST. art. VIII, § 14. Pursuant to this provision, Stilp raises the following

---

1. A Petition for Review was filed by Stilp, and the Respondents filed preliminary objections to it. Stilp thereafter filed an Amended Petition, which carried an altered caption, deleted some references to the Auditor General, added some references to the Treasurer and added several new counts.

2. There are two Count XIIIs. A differentiating numeral is added for clarification.

challenge: Count XII–Legislative Leadership Accounts.

Next, Stilp quotes Article III, Section 29 of the Pennsylvania Constitution, titled "Appropriations for Public Assistance, Military Service, Scholarships," which provides:

No appropriation shall be made for charitable, educational or benevolent purposes to any person or community nor to any denominational and sectarian institution, corporation or association: Provided, That appropriations may be made for pensions or gratuities for military service and to blind persons twenty-one years of age and upwards and for assistance to mothers having dependent children and to aged persons without adequate means of support and in the form of scholarship grants or loans for higher educational purposes to residents of the Commonwealth enrolled in institutions of higher learning except that no scholarship, grants or loans for higher educational purposes shall be given to persons enrolled in a theological seminary or school of theology.

PA. CONST. art. III, § 29. Pursuant to this provision, Stilp raises the following challenge: Count XIII(i)—Walking Around Money (WAMs).

Stilp seeks various forms of relief. Primarily, he prays for declarations that the challenged benefits are unconstitutional and for injunctions restraining the Treasurer from disbursing future monies for the challenged purposes. He also seeks mandatory injunctions compelling the return of unspent monies in leadership accounts and requiring legislative leaders to cooperate with an audit by the Auditor General.[3]

## II. Standard of Review

■■■ The rule is well settled that in ruling upon preliminary objections, the courts must accept as true all well-pleaded allegations of material facts as well as all of the inferences reasonably deducible from the facts. *Dep't of Gen. Servs. v. Bd. of Claims*, 881 A.2d 14 (Pa.Cmwlth.2005). For preliminary objections to be sustained, it must appear with certainty that the law will permit no recovery, and any doubt must be resolved in favor of the non-moving party. *Id.*

■■■ There are various statutes which address benefits available to state legislators. Although Stilp does not identify any of these, he essentially challenges those statutes on constitutional grounds. During our review of the Amended Petition we must be mindful of the presumption that the legislature does not intend to violate the Constitution, and the corollary that a party asserting the unconstitutionality of a legislative act bears a heavy burden of proof. *Bible v. Dep't of Labor and Indus.*, 548 Pa. 247, 696 A.2d 1149 (1997). A statute will only be declared unconstitutional if it clearly, palpably and plainly violates the Constitution. *Ieropoli v. AC&S Corp.*, 577 Pa. 138, 842 A.2d 919 (2004).

## III. Preliminary Objections of the Governor

Because Stilp made no averments about the Governor and sought no relief against him, the Governor filed preliminary objections in the nature of a demurrer for failure to state a claim against him.[4] We sustain the demurrer.

---

**3.** The Auditor General is not named in caption of the Amended Petition for Review and is not a party currently before the Court.

**4.** The Governor also sought relief based on defective service. In particular, the Governor averred that he was served by first-class mail, but Pennsylvania Rule of Appellate Procedure

■ Stilp requests a statutory remedy under the Declaratory Judgments Act.[5] In order to sustain an action under the Declaratory Judgments Act, a plaintiff must demonstrate an "actual controversy" indicating imminent and inevitable litigation, and a direct, substantial and present interest. *Wagner v. Apollo Gas Co.*, 399 Pa.Super. 323, 582 A.2d 364 (1990). Because an action for declaratory judgment cannot be sustained until these elements can be shown to exist, it follows that a cause of action for declaratory judgment does not arise until such "actual controversy" exists. *Id.*

■ Here Stilp fails to plead any actual controversy he has with the Governor. Also, he seeks no declaration pertaining to the Governor. Stilp therefore fails to state a claim against the Governor for declaratory relief.

Stilp argues that the Governor is an integral part of the process of appropriating money to the General Assembly. Unfortunately, Stilp does not make such an averment in his Amended Petition. Also, he does not challenge the General Appropriations Act existing at the time of suit [6] or any other appropriations act. In the absence of these averments and challenges, he cannot state a claim against the Governor.

■ Similarly, Stilp seeks injunctive relief. Among other items, he must plead and prove that the wrong of the defendant is manifest. *Moscatiello v. Whitehall Borough*, 848 A.2d 1071 (Pa.Cmwlth.2004). Because Stilp fails to plead any manifest

wrong with respect to the Governor, he fails to state a claim for injunctive relief against the Governor.

## IV. Preliminary Objections of Treasurer

■ Stilp makes no averments regarding the Treasurer; however, he seeks relief involving the Treasurer. In particular, Stilp prays for injunctions restraining future disbursements by the Treasurer for the stated purposes. Stilp also prays for an injunction restraining future disbursements by the Treasurer to the General Assembly until all "excess funds are returned" and an audit is performed.

■ In the absence of any averment that the Treasurer has made or will make disbursements for the stated purposes, Stilp fails to plead an actual controversy with the Treasurer which might support declaratory relief. Similarly, in the absence of averments that the Treasurer has made or will make disbursements for the stated purposes, Stilp fails to plead a manifest wrong which would support injunctive relief. Accordingly, we sustain the Treasurer's demurrers.

It is unclear whether Stilp's failure to state a claim against the Treasurer can be cured. Under these circumstances, dismissing the action is not appropriate. *Walch v. Red Hill Borough*, 110 Pa. Cmwlth. 554, 532 A.2d 1238 (1987). Therefore, the Treasurer's demurrer is sustained without prejudice.

1514(c) requires service in person or by certified mail. Because of our disposition of the demurrer, we need not fully discuss this additional meritorious but curable objection. *See Awkakewakeyes v. Dep't of Corr.*, 142 Pa. Cmwlth. 232, 597 A.2d 210 (1991).

**5.** 42 Pa.C.S. §§ 7531–7541.

**6.** General Appropriations Bill of 2005, Act No. 2005–1A.

## V. Preliminary Objections of State Legislators[7]

### A. Standing

The state legislators challenge Stilp's standing to bring this action. However, we recently disposed of this issue in Stilp's favor. In *Stilp v. Commonwealth*, 898 A.2d 36 (Pa.Cmwlth.2006) *(en banc ) (Stilp 2006 (audit ))*, the same objection was raised by the state legislators to Stilp's action to compel an audit of the legislature by the Auditor General. As relevant to the current discussion, we concluded Stilp had standing. *Id.* at 39, n. 7 (citing *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 507 A.2d 323 (1986)). More recently, our Supreme Court determined Stilp enjoys taxpayer standing. *Stilp v. Commonwealth*, 588 Pa. 539, 905 A.2d 918 (2006) *(Stilp 2006 (pay raise ))*. Consistent with those holdings, we overrule the preliminary objections based on standing.

### B. Preclusion

The state legislators contend Stilp is precluded from raising some or all of his claims as a result of prior litigation. In particular, they argue that claims for an audit of the legislature are precluded by the prior pending action in *Stilp 2006 (audit)*. Also, they assert that because challenges to all legislative benefits could have been brought in *Consumer Party* (unvouchered expenses), Stilp is precluded from bringing those challenges now. Finally, they argue that Stilp is precluded from again bringing challenges to cost-of-living adjustments and increases in unvouchered expenses because he raised and lost those challenges in *Stilp v. Commonwealth*, 699 A.2d 1353 (Pa.Cmwlth.1997) *(Stilp 1997 (COLAs and unvouchered expenses ))*.

 Res judicata encompasses two related, yet distinct principles: technical res judicata and collateral estoppel. *Henion v. Workers' Comp. Appeal Bd. (Firpo & Sons, Inc.)*, 776 A.2d 362 (Pa.Cmwlth. 2001). Technical res judicata provides that where a final judgment on the merits exists, a future lawsuit on the same cause of action is precluded. *Id.* Collateral estoppel acts to foreclose litigation in a subsequent action where issues of law or fact were actually litigated and necessary to a previous final judgment. *Id.*

 Technical res judicata requires the coalescence of four factors: (1) identity of the thing sued upon or for; (2) identity of the causes of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or capacity of the parties suing or being sued. *Id.* Res judicata applies to claims that were actually litigated as well as those matters that should have been litigated. *Id.* Generally, causes of action are identical when the subject matter and the ultimate issues are the same in both the old and new proceedings. *Id.*

 Similarly, collateral estoppel bars a subsequent lawsuit where (1) an issue decided in a prior action is identical to one

---

7. In addition to naming the General Assembly as a Respondent, Stilp named three leaders of the State Senate, Robert C. Jubelirer, David Brightbill and Robert Mellow, as Respondents. Senators Jubelirer and Brightbill filed preliminary objections to the Amended Petition, and Senator Mellow filed separate preliminary objections.

Stilp also named as Respondents three leaders of the State House of Representatives, John M. Perzel, Sam Smith and H.W. DeWeese. These parties filed preliminary objections together.

Because the three sets of preliminary objections from state legislators raise similar issues, we discuss them together.

presented in a later action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action, and (4), the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *Rue v. K–Mart Corp.*, 552 Pa. 13, 713 A.2d 82 (1998).

■ Stilp initially argues that res judicata and collateral estoppel are affirmative defenses which should not be raised by preliminary objection. While this observation is true, the procedural irregularity may be waived by failing to formally challenge it by filing preliminary objections to the preliminary objections. *Duquesne Slag Prods. Co. v. Lench*, 490 Pa. 102, 415 A.2d 53 (1980) (res judicata). Because Stilp did not formally challenge the procedure by which these issues were raised, he waived this threshold argument.

### 1. *Stilp 2006 (audit)*

■ *Stilp 2006 (audit)* was pending when the current action was filed. In it, Stilp alleged the Auditor General failed to perform an audit of the General Assembly which resulted in unconstitutional conduct by the General Assembly. He sought a declaration that the Auditor General was empowered to perform such an audit and a mandatory injunction compelling the Auditor General to perform the audit and compelling the General Assembly to cooperate with the audit. This Court dismissed the action because it lacked constitutional and statutory authority and because it was contrary to the Separation of Powers doctrine.

Among the remedies requested in the current action, Stilp again seeks "7. equitable relief compelling the Auditor General to audit the General Assembly ... to insure the return of such funds and compel the leadership of the General Assembly to cooperate with such audit by the Auditor General...."

As the foregoing legal discussion makes clear, collateral estoppel precludes the current prayer for audit-based relief. In *Stilp 2006 (audit)* the same issue was decided against the same party by final judgment of this Court. Accordingly, the preliminary objection to audit-based relief is sustained.[8]

### 2. *Consumer Party*

In *Consumer Party*, taxpayers sought declaratory, injunctive and monetary relief against alleged unconstitutional provisions of the Public Official Compensation Law (Compensation Law).[9] The challenged provisions established salary, expense and mileage amounts for state legislators, including an unvouchered expense allowance. As pertinent to the current discussion, our Supreme Court concluded that Article II, Section 8 of the Pennsylvania Constitution did not limit expenses of state legislators. The Court also concluded the taxpayers neither pled nor proved that the unvouchered expense allowance was in reality a veiled salary increase proscribed by the constitution.

Obviously, this Court is bound by the Supreme Court's holding in *Consumer Party*, which pertains to unvouchered expense allowances for state legislators.

---

**8.** State legislators also raise preliminary objections to the audit-based relief as barred by the Separation of Powers doctrine and as barred by the rule of prior pending action. After the preliminary objections were filed and briefed, this Court decided *Stilp 2006 (audit), appeals docketed*, No. 76 MAP 2006 (Pa. May 22, 2005), No. 80 MAP 2006 (Pa. June 5, 2006). Because of our disposition, we need not discuss these issues here.

**9.** Act of September 30, 1983, P.L. 160, *as amended*, 65 P.S. §§ 366.1–366.5b.

However, the case does not preclude Stilp's current challenges to other items of value. This is because Stilp was not a party in *Consumer Party;* consequently, technical res judicata does not apply to preclude those other issues which could have been litigated in *Consumer Party* but were not.

### 3. *Stilp 1997 (COLAs and unvouchered expenses)*

 Stilp's 1997 challenge to a 1995 amendment of the Compensation Law which increased state legislators' salary through COLAs and increased state legislators' unvouchered expense allowances was dismissed by this Court for failure to state a claim.

In response to current preliminary objections raising preclusion, Stilp argues that it would not be fair to the rest of the citizens of the Commonwealth if collateral estoppel applied. However, Stilp offers no legal basis to distinguish the claims he raised in 1997 from those he raises now. In the absence of such a distinction, collateral estoppel applies and precludes re-litigation of issues already decided against Stilp by final judgment of this Court. Therefore, preliminary objections to claims for relief involving COLAs and unvouchered expenses are sustained.[10]

### C. Failure to Join Indispensable Parties

Some of the state legislators seek dismissal of the Amended Petition for failure to name as respondents all past and present members of the General Assembly, whose rights to various benefits may be affected by the declarations Stilp seeks.

Stilp replies that the named state legislators, who collectively comprise the leadership of both parties in both chambers, can adequately represent the interests of all past and present state legislators. He cites *City of Philadelphia v. Commonwealth,* 575 Pa. 542, 838 A.2d 566 (2003).

 Pursuant to Section 7540(a) of the Declaratory Judgments Act, 42 Pa.C.S. § 7540(a), all persons shall be made parties who have or claim any interest which would be affected by the declaration. This provision is mandatory. *County of Allegheny v. Commonwealth,* 71 Pa.Cmwlth. 32, 453 A.2d 1085 (1983).

Nevertheless, our Supreme Court recognizes limiting principles to the mandatory joinder provision. *City of Philadelphia.* For example, where the interest involved is indirect or incidental, joinder may not be required. *Id.* Additionally, where a person's official designee is already a party, the participation of such designee may alone be sufficient, as the interests of the two are identical, and thus, the participation of both would result in duplicative filings. *Id.* More importantly for this case, where a constitutional challenge to a legislative enactment may potentially affect a large number of parties whose joinder would render litigation unmanageable, participation by the Attorney General and representation by the presiding officers of both chambers and by minority leaders of both chambers may be sufficient to confer jurisdiction. *Id.*

10. We acknowledge that the Supreme Court's recent critique of a temporary mid-term increase in unvouchered expense allowance differed from the analysis this Court applied in *Stilp 1997 (COLAs and unvouchered expenses ). See Stilp 2006 (pay raise).* Nevertheless, as discussed hereafter, state legislators no longer receive unvouchered expense allowances under a temporary mid-term scheme as discussed by the Supreme Court. Therefore, the Supreme Court's recent decision in *Stilp 2006 (pay raise)* does not compel a different holding on this issue.

The recently espoused rule of *City of Philadelphia* controls here. The addition of hundreds of new parties to an already robust roster will not enhance the thoughtful disposition of constitutional challenges to legislative acts. Because the Attorney General is participating and because the legislative leaders of both chambers are participating, we conclude jurisdiction is sufficiently established under the Declaratory Judgments Act. Intervention will be liberally granted to past or current state legislators who wish more personal involvement.

### D. No Case or Controversy

One state legislator complains that Stilp seeks an improper advisory opinion and that any controversy is not sufficiently imminent to warrant relief under the Declaratory Judgments Act.

■ Declaratory judgment is not appropriate to determine rights in anticipation of events which may never occur but is appropriate where there is imminent and inevitable litigation. *Silo v. Ridge*, 728 A.2d 394 (Pa.Cmwlth.1999). Without an actual imminent or inevitable controversy, a party lacks standing to maintain a declaratory judgment action. *Id.*

Stilp sufficiently establishes the inevitability of litigation. Stilp's repeated lawsuits and his forceful public contentions regarding the state legislature represent the ripening seeds of a controversy sufficient to support judicial review. *Wecht v. Roddey*, 815 A.2d 1146 (Pa.Cmwlth.2002); *Ronald H. Clark, Inc. v. Hamilton Twp.*, 128 Pa.Cmwlth. 31, 562 A.2d 965 (1989). Thus, judicial review furthers the purpose of the Declaratory Judgments Act to provide relief from uncertainty and insecurity and is consistent with the statutory direction for liberal construction of this remedy.

### E. Lack of Specificity

Some of the state legislators preliminarily object to a lack of specific averments of injured parties and of actions that form the basis of claims. They point out that there are no averments of injuries to specific parties, including Stilp. With regard to legislative leadership accounts in Count XII, they object to a lack of any facts explaining whether, how or why such accounts are surplus accounts proscribed by the constitution. Also, as to WAMs in Count XIII(i), they object because Stilp fails to identify any WAM distribution for charitable, educational or benevolent purposes. Some of the state legislators argue that these lapses interfere with their ability to defend because the true facts are so much different than Stilp's broad conclusions.

In response, Stilp contends his petition sufficiently states the facts upon which the action is based, and he mocks the state legislators who raise the preliminary objection.

A party must plead the material facts on which a cause of action is based. Pa. R.C.P. No. 1019(a). Averments of time, place, and special damage shall be stated specifically. Pa. R.C.P. No. 1019(f).

■ The purpose of a preliminary objection raising specificity is to ensure that an adverse party's ability to answer and defend will not be unduly impaired by a pleader's vagueness in stating the grounds of his suit. *Paz v. Dep't of Corr.*, 135 Pa.Cmwlth. 162, 580 A.2d 452 (1990). Thus, the purpose is to require the pleader to disclose the material facts sufficient to enable the adverse party to prepare his or her case. *Landau v. W. Pennsylvania Nat'l Bank*, 445 Pa. 217, 282 A.2d 335 (1971).

**1.**

██ We overrule the specificity objection relating to sufficiency of injury averments. Stilp pleads a violation of the state constitution by those under oath to comply with constitutional duties, and he specifies the provisions in question. Damage is not a material fact on which a cause of action for declaratory relief is based. *See Apollo Gas Co.* Thus, further specificity of injury is not necessary to state a claim for that remedy. Regarding the request for injunctive relief, violation of an express statutory provision *per se* constitutes irreparable harm. *Council 13, Am. Fed., of State, County and Mun. Employees, AFL–CIO v. Casey,* 141 Pa.Cmwlth. 199, 595 A.2d 670 (1991). For purposes of preliminary objections, Stilp's averment of violation of organic law is a sufficient specification of irreparable injury.

**2.**

In addition, we overrule specificity challenges to Count XII averments that leadership accounts constitute prohibited surplus accounts. The state legislators do not claim an inability to identify the accounts in question. Rather, they dispute whether the accounts are surplus accounts.

██ A pleader must state the material facts on which a cause of action is based in concise and summary form, Pa. R.C.P. No. 1019(a); however, it is not proper to plead evidence. *Frey v. Dougherty,* 286 Pa. 45, 132 A. 717 (1926); *see* 4 *Standard Pennsylvania Practice 2d* § 21:51 (2001 ed). Stilp sufficiently stated the ultimate material fact for this claim in concise form. The request that he plead evidence to support the fact lacks merit.

**3.**

██ We sustain the specificity objections to Count XIII(i), related to WAMs. Stilp fails to identify any specific WAM or any recipient of an alleged improper WAM, past, present or in the immediate future. The recipient of any present or imminent grant must be joined as a party to an action seeking declaratory relief. 42 Pa.C.S. § 7540(a). As to past grants, Stilp fails to specify any time of an improper grant, thereby impairing Respondents' ability to plead affirmative defenses based on the passage of time. This is contrary to Pa. R.C.P. No. 1019(f).

**F. Demurrers**

All state legislators challenge the legal sufficiency of the claims regarding various things of value available to them.

**1. Article II, Section 8 (Compensation)**

The state legislators contend that some of the items, if received, would constitute "salary" and not prohibited "other compensation." Other items are payments for expenses of a type permitted by case law. Most of the items, they argue, do not fall within the constitutional limitation at all; rather, they are benefits.

Stilp responds that Article II, Section 8 specifically prohibits "other compensation" beyond salary and mileage. He urges literal construction of the language, quoting dictionary definitions of "compensation" and citing the dissenting opinion in *Commonwealth ex rel. Wolfe v. Butler,* 99 Pa. 535 (1882) (Trunkey, J., dissenting) (the relevant constitutional provision allows for two specific types of compensation and forbids all others).

As noted before, the constitutional language in question states in its entirety:

> The members of the General Assembly shall receive such salary and mileage for regular and special sessions as shall be fixed by law, and no other compensation whatever, whether for service upon com-

mittee or otherwise. No member of either House shall during the term for which he may have been elected, receive any increase of salary, or mileage, under any law passed during such term.

This language first appeared in the Pennsylvania Constitution of 1874. *See* PA. CONST. art. II, § 8 (1874). The language has been addressed several times by our Supreme Court. These decisions inform our analysis.

### a. Cases

The language was first construed a few years after its adoption in *Wolfe*. At issue was whether a state legislator could be paid both a salary for a session of 100 days and a per diem amount for up to 50 days thereafter, despite the limiting language in the state constitution. A majority of the Supreme Court held the 1874 statute authorizing both a salary and a per diem amount was constitutional as to legislative compensation for service in 1881. Both the majority and the dissent agreed that the constitutional provision meant "that a legislature should not have power to pass any law which should have the effect of increasing the pay of its own members, and that they should under no circumstances receive any more compensation that that previously ascertained by law." *Wolfe*, 99 Pa. at 543; *see Id.* at 544, (Trunkey, J., dissenting) (the intention is to prevent any increase of the member's salary and mileage, after his election). The majority, however, rejected a construction that only salary and mileage could be received, reasoning that a per diem manner of computing a portion of salary was not specifically proscribed.

In 1905 the language was addressed again in *Russ v. Commonwealth*, 210 Pa. 544, 60 A. 169 (1905). At issue was whether the legislature could authorize direct payment for travel, food, and related entertainment expenses incurred by legislators while attending the dedication of a monument in New York. A majority of the Supreme Court rejected an argument that the benefits of the event constituted forbidden compensation. The majority reasoned that "payment to the man who furnished what was so necessary cannot be regarded as compensation or pay to the members of the Legislature for their services as legislators...." *Id.* at 558, 60 A. at 174.

The language of Article II, Section 8 from the Pennsylvania Constitution of 1874 was adopted again in the Constitution of 1968. Thereafter, it was addressed in 1986 in *Consumer Party*, in which taxpayers challenged the existing version of the Compensation Law. At issue was whether an unvouchered expense allowance was prohibited by Article II, Section 8 language. A unanimous Supreme Court decided that there was a clear difference between salary and expense allowances. "Article II, section 8 by its own terms prohibits only increases in 'salary' or 'mileage' during the term in which the law providing for such an increase is passed, while ... the Compensation Act provides for an 'unvouchered expense allowance.'" *Id.* at 184, 507 A.2d at 336. The Court also concluded the taxpayers failed to prove the expense allowance is not needed and will not be used to pay for the legitimate expenses of state legislators. Accordingly, the Court affirmed judgment upholding the constitutionality of the Compensation Law.

Most recently, the issue was reviewed in *Stilp 2006 (pay raise)*. Pertinent to this discussion, the Supreme Court considered the constitutionality of a 2005 amendment to the Compensation Act which increased legislators' future salary and immediately increased the amount of legislators' unvouchered expense allowance. The immediate mid-term increase in the expense

allowance was determined by a formula that referred precisely to the substantial future pay raise. Also, the increase in the expense allowance was temporary, designed to lapse when the salary increase went into effect. The Court determined that "[e]xpenses **are** different from salary" and that "as a general matter, unvouchered expense allowances are not *per se* unconstitutional." *Id.* at 622, 905 A.2d at 967 (emphasis in original). The Court also determined that the temporary mid-term increase in unvouchered expenses did not bear a reasonable relationship to actual expenses, and for that reason was unconstitutional.

### b. Interpretation

■ When a court of last resort has construed language, use of the same language thereafter is presumed to be consistent with the prior judicial construction. *See* 1 Pa.C.S. § 1922(4); *Commonwealth v. Wanamaker*, 450 Pa. 77, 296 A.2d 618 (1972). We therefore presume that use of the 1874 language addressing "Compensation" again in the Pennsylvania Constitution of 1968 was intended to be consistent with prior Supreme Court precedent in *Wolfe* and *Russ.* In particular, we presume the framers intended that receipt by state legislators of per diem amounts in addition to a flat salary is permissible because per diem amounts are not specifically proscribed by the constitutional limitation. *Wolfe.* Also, we presume the framers intended that receipt by state legislators of the benefits of necessary expenses paid from public funds is permissible. *Russ.* It is noteworthy that Stilp does not discuss this tenant of construction.

In addition, we are bound by the Supreme Court's holding in *Stilp 2006 (pay raise)* and *Consumer Party* that unvouchered expenses may be reimbursed to state legislators if the reimbursement bears a reasonable relationship to actual expenses.

There are also several broader lessons in the Supreme Court decisions regarding the "compensation" limitation. First and foremost, the Court consistently rejects the argument that only "salary" and "mileage" can be constitutionally received by state legislators. *Consumer Party; Russ; Wolfe; see Stilp 2006 (pay raise)* (expenses are different from salary; unvouchered expense allowances are not *per se* unconstitutional). Although language in the constitutional provision could support a conclusion that state legislators should not receive anything of value beyond "salary and mileage," that construction was repeatedly declined by the Supreme Court, and the urged construction has not been the law in this Commonwealth for the last 125 years. There are no decisions to the contrary.

Second, the Court consistently adopts the argument that the provision prohibits only "salary" and "mileage" increases during a legislative term. *Consumer Party; Wolfe; see Stilp 2006 (pay raise).* Third, the Court repeatedly holds that the language was intended to limit the power of legislators to increase their compensation mid-term. *Id.*

In short, our Supreme Court repeatedly rejects the position advanced by Stilp here. It is noteworthy that Stilp does not discuss these cases. For this reason, the demurrers are sustained with prejudice as to claims based on Article II, Section 8.[11]

There is another reason why the demurrers must be sustained. As noted above,

---

11. As part of Count I, Stilp challenges the prospective receipt by legislators of an unvouchered expense allowance of $7,500 a year, which he avers represents veiled compensation disguised as expenses. Am. Pet. for Review, ¶¶ 39, 40, 66. As mentioned previously, he does not refer to the legislation authorizing these payments, and he does not

the Supreme Court repeatedly holds that the constitutional language was intended to limit the power of legislators to increase their compensation mid-term. *Consumer Party; Wolfe; see Stilp 2006 (pay raise)*. Stilp, however, fails to aver that any of the identified items of value were received for the first time or were increased during the current term. For this additional reason he fails to state a claim for violation of Article II, Section 8.

### c. Count XIII(ii)

Special discussion is required for Count XIII(ii), labeled "Hired Lawyer Expenditures for Legislators' Personal Needs." No state legislator argues that legal expenses for legislators' personal needs can be paid from public money. Rather, they deny knowledge of payment for any legal expenses beyond those necessitated by a legislator's elected duties. They rely on *Shapp v. Sloan*, 480 Pa. 449, 391 A.2d 595 (1978) to support the propriety of such expenses. Because Stilp fails to specify any instance of legal expenses incurred for a legislator's personal needs, they demur.

■ Stilp does not address this issue in his written argument. He makes the following averment in his Amended Petition:

160. Any additional legal services and expenditures provided to members that are for personal needs of legislators and are in addition to salary. [sic]

Clearly, Stilp does not aver that these types of expenses were actually paid or are about to be paid from public funds. Without such an averment, he fails to state a claim. Notably, he does not offer to supply further facts. For this reason, the preliminary objection to Count XIII(ii) is sustained.

### d. Conclusion

In summary, we sustain demurrers to the following claims based on an alleged violation of Article II, Section 8: Counts I through XI, inclusive, and Counts XIII(ii) and XIV.

### 2. Article VIII, Section 14 (Surplus)

All state legislators question whether Stilp states a claim in Count XII for violation of Article VIII, Section 14 of the Pennsylvania Constitution by the maintenance of so-called legislative leadership accounts. They assert the referenced accounts remain in the state treasury and are not under the exclusive control of the

indicate that the payments will be first received or increased during the current term. Consistent with the foregoing analysis which rejected the contention that legislators can receive only salary and mileage, we sustain the demurrer to this part of the Count I challenge.

We recognize that in our Supreme Court's recent decision in *Stilp 2006 (pay raise)*, doubt was cast on this Court's previous analysis of a 1995 temporary mid-term increase in legislators' unvouchered expense allowance. *See Stilp 1997 (COLAs and unvouchered expenses)*. However, that temporary mid-term expense allowance increase was authorized by Section 5.2 of the Act of October 19, 1995, P.L. 324, *formerly* 65 P.S. § 366.5b (provided for additional expenses for members of the General

Assembly). By its terms, that temporary mid-term increase expired November 30, 1998.

Currently, state legislators receive the unvouchered expense allowance of $7,500 annually pursuant to a different provision. Beginning with Section 4 of the Act of September 30, 1983, P.L. 160, *as amended*, 65 P.S. § 366.4(a), legislators received the $7500 annual expense allowance. Most recently, the allowance was continued in Section 3 of the Act of October 19, 1995, *as amended*, 65 P.S. § 366.4(a). These provisions are not mid-term increases, and they contain none of the offensive provisions recently discussed by the Supreme Court. Thus, the Supreme Court's decision in *Stilp 2006 (pay raise)* does not require a different result as to unvouchered expenses of $7,500 annually.

legislative leadership. They also claim that the funds have been appropriated for use over more than one fiscal year and are therefore "continuing" appropriations not within the proscribed "surplus" language of the constitution. They invite the Court to take judicial notice of information confirming their assertions.

Stilp in very brief response contends his averments are sufficient.

 A court should sustain a preliminary objection in the nature of a demurrer only where it appears from the face of the complaint that recovery upon the facts alleged is not permitted as a matter of law. *220 P'ship v. Phila. Elec. Co.*, 437 Pa.Super. 650, 650 A.2d 1094 (1994). When considering a demurrer a court cannot consider matters collateral to the complaint but must limit itself to such matters as appear therein. *Id.* As a corollary, an effort to supply facts missing from the objectionable pleading makes the preliminary objection in the nature of a demurrer an impermissible "speaking demurrer." *Matschener v. City of Pittsburgh*, 36 Pa.Cmwlth. 69, 387 A.2d 954 (1978).

 When ruling on a preliminary objection in the nature of a demurrer, a court should severely limit its use of judicial notice, because the purpose of a demurrer is to challenge the legal basis for a complaint, not its truthfulness. *Martin v. Com., Dep't of Transp.*, 124 Pa.Cmwlth. 625, 556 A.2d 969 (1989). As a result, this Court routinely declines to take judicial notice of facts beyond those appearing on the face of the pleading challenged by demurrer. *E.g., id.; Ins. Adjustment Bureau v. Ins. Comm'r for Commonwealth of Pennsylvania*, 86 Pa.Cmwlth. 491, 485 A.2d 858 (1984).

Certain state legislators argue that we may take judicial notice of facts when considering a preliminary objection in the nature of a demurrer, and they cite *Pennsylvania School Boards Ass'n, Inc. v. Commonwealth Ass'n of School Administrators*, 569 Pa. 436, 805 A.2d 476 (2002). However, that case does not discuss a request to take judicial notice when reviewing a demurrer. Rather, the case states that in granting a declaratory judgment on a constitutional challenge a court may take judicial notice of legislative journals. Therefore, the case does not compel the solicited conclusion.

 Here, Stilp avers that legislative leaders acknowledge the existence of legislative leadership accounts, that the current balance is acknowledged to be approximately $135,000,000.00, and that legislative leaders accumulated the balance by failing to return surplus appropriations at the end of each fiscal year contrary to Article VIII, Section 14 of the Pennsylvania Constitution. Am. Pet. for Review at ¶¶ 143, 144, 145, 149. There are no averments that the appropriations are for use over more than one year or are "continuing" appropriations. Assuming the truth of averments made by Stilp, as we must for current purposes only, they state a constitutional challenge to acknowledged accounts.

In view of the foregoing discussion, we decline the invitation to take judicial notice of various facts, and we overrule the preliminary objection in the nature of a demurrer to Count XII.

### 3. Article III, Section 29(Appropriations for Public Assistance, Military Service, Scholarships)

Count XIII(i) challenges the constitutionality of local grant monies or WAMs. The state legislators preliminarily object in the nature of a demurrer, contending that the averments are impermissibly speculative because they fail to identify any particular grant.

Stilp briefly asserts his "averments that legislator's [sic] hand out money to their local districts sufficiently states a claim for violating this section of the constitution." Petitioner's Br. in Opposition to Prelim. Objections at 17.

Having sustained a preliminary objection to specificity, it is not necessary to also decide the demurrer based on the speculative nature of the averments.

## V. Summary

As a result of the indicated rulings, only Count XII (leadership accounts) remains, and only the Commonwealth, General Assembly and the named state legislators are Respondents. Stilp is granted leave to replead as to the Treasurer and as to Count XIII(i) (WAMs) only.

Judge SMITH–RIBNER did not participate in the decision in the case.

Judge COHN JUBELIRER did not participate in the decision in the case.

Judge LEAVITT did not participate in the decision in the case.

## ORDER

AND NOW, this 13th day of November, 2006, preliminary objections to the Amended Petition are **OVERRULED in part** and **SUSTAINED in part.** In particular, we hold

| | |
|---|---|
| Preliminary objections of Governor: | sustained; |
| Preliminary objections of Treasurer: | sustained without prejudice; |
| Standing: | overruled; |
| Preclusion: | sustained as to audit relief, |
| | sustained as to COLAs and expenses, |
| | overruled as to all other issues; |
| Failure to join indispensable parties: | overruled; |
| No case or controversy: | overruled; |
| Specificity: | overruled as to injuries, |
| | overruled as to Count XII (surplus), |
| | sustained as to Count XIII(i) (WAMs); |
| Demurrers: | sustained as to Counts I through XI, |
| | overruled as to Count XII (surplus), |
| | sustained as to Counts XIII(ii) and XIV, |

all as more fully described in the foregoing opinion. Petitioner, Gene Stilp, is granted leave to file a second amended petition repleading as to the Treasurer and as to Count XIII(i) (WAMs) only, within 30 days of the date hereof.

CONCURRING OPINION BY
President Judge COLINS.

I concur with the majority's resolution of this controversy except for allowing Stilp to file a second amended petition containing further averments as to the Treasurer and as to Count XIII(i) (WAMs). After having been given two opportunities to state a cognizable claim, Stilp has failed to do so. I believe that this is because he cannot do so; therefore, I would sustain with prejudice the preliminary objections and dismiss these two counts of the complaint.

Judge McGINLEY joins in this concurring opinion.